*1064 OPINION OF THE COURT
David Goldstein, J.
The issue is whether a defendant, before the court on a violation of probation (VOP), may be examined as to his fitness to proceed, pursuant to CPL article 730, where disposition of the VOP could result in vacatur of the previously imposed probationary sentence and the imposition of a jail term.
On February 26, 1993, defendant was convicted upon an Alford plea of attempted robbery in the second degree, a "D” violent felony. The case involved the theft of 12 bottles of Revlon nail polish from a Walgreens drugstore and the subsequent attack with a razor directed at the security officer who had attempted to stop him. The nail polish and the razor were both recovered after the arrest. The plea was with the District Attorney’s consent and was to carry a sentence of five years’ probation, conditioned upon defendant entering and remaining in a program of psychiatric treatment and counselling. Although he had a lengthy arrest record, this was his first felony conviction. His prior involvement with the law was marihuana related and dated back to 1987.
On April 16, 1993, defendant was sentenced to five years’ probation, conditioned upon his submission to psychiatric treatment and counselling as directed by the Department of Probation. At the time, he executed an acknowledgment that a condition of his probation was that he "[ujndergo medical, psychiatric, or other appropriate treatment and remain in a specified institution or program when required for that purpose if so directed by the Court or the Probation Officer.”
On October 13, 1993, upon defendant’s failure to attend a psychiatric program and to continue prescribed medication, a violation of probation was filed. The VOP also alleged that he had failed to report to his probation officer at regularly prescribed intervals and the probation officer noted that he received a telephone call from defendant’s mother that he had threatened to kill her. Upon defendant’s failure to appear, a warrant was issued.
On January 3, 1994, defendant was returned on the warrant, at which time he was arraigned on the violation of probation and bail was set. The matter was adjourned for an updated probation report and a suicide watch and medical attention were directed. After a CPL article 390 examination was ordered, primarily at defense counsel’s request, on March *1065 9, 1994, this court ordered that an examination as to defendant’s fitness be held pursuant to CPL article 730. This followed a letter from defendant’s mother that her son had threatened to kill her and, in her opinion, he was a danger to society.
The article 730 examination reports concluded that Mr. Panesga was not fit to proceed. Dr. Schwartz found a marked deterioration in defendant’s mental state since his examination in aid of sentencing, originally performed in April 1993, concluding that defendant’s schizophrenic condition had regressed to a state of psychosis, with paranoid and grandiose delusions and a personality disorder. The report refers to defendant’s beliefs that Adolph Hitler was his grandfather; FBI and CIA agents had been planted in the unit where he had been jailed at Bikers Island; his mother is not his real mother; he came from China and some Chinese people had threatened to steal his gun and VCR; and he is involved in one of the largest drug rings in the United States and has substantial sums of money in Zurich. Defendant expressed the belief that the article 730 examination was to discover and understand the "voices,” which he referred to as "disturbances in my life.” Dr. Schwartz’ diagnosis was "[sjehizophrenia, paranoid, chronic with acute exacerbation.” Both concluded that he was not legally fit to proceed. An update report to the court from the Kings County Hospital Center, dated March 8, 1994, advised that defendant had threatened to kill the referring psychiatrist from Rikers Island.
Defense counsel has taken the position that, in the present posture of this proceeding, as a violation of probation, an examination pursuant to CPL article 730 may not be directed, since defendant has already been sentenced and there is no criminal proceeding presently pending. Thus, it has been argued that, notwithstanding that disposition of the VOP proceeding may result in defendant being resentenced to a term of incarceration, and the original sentence vacated for that purpose, the court’s jurisdiction is limited to an examination in aid of sentencing, pursuant to CPL article 390.
I disagree. In my view, in a situation where a defendant has been sentenced to probation, the violation of which may result in the imposition of a jail sentence, a court should retain necessary jurisdiction to direct appropriate relief, including hospitalization, for a defendant who is unfit to proceed.
In the absence of such authority, the right to an adversarial *1066 hearing on the violation of probation would be rendered meaningless. If the right to a hearing, and the ancillary right to the assistance of counsel thereat, are to have any real meaning or vitality, a necessary prerequisite is defendant’s ability to aid and assist his attorney in the defense at such hearing. Thus, his fitness to proceed is of critical significance and may be properly tested only by a CPL article 730 examination, the results of which may warrant defendant’s hospitalization, with the VOP proceeding deferred until he is fit to proceed. A CPL article 390 examination, which is conducted in aid of sentencing, is ill-suited for this purpose, in the first place, since sentence has already been imposed and, in the second place, since a negative report affords no direction to the court as to the appropriate procedure to follow, nor does it in any way dispose of the VOP proceeding. Equally unsatisfying is the civil commitment advocated by defense counsel, which would effectively divest the court of jurisdiction and control over defendant’s person and leave the proceeding in limbo, with no direction and no disposition in the future. Such a result would be most unfortunate, in terms of the health and security of defendant and the general public, and the applicable principles which underlie the criminal justice system.
While I am mindful that CPL 730.30, on its face, appears to authorize a CPL article 730 examination only during the pendency of a criminal action, between arraignment and sentence, the statute does not purport to address the type of situation which exists in a violation of probation proceeding. The attention of the Legislature ought to be directed to correct the apparent omission. Nevertheless, in such case, where a defendant receives a revocable probationary sentence, the violation of which could result in vacatur of the sentence and imposition of a term of incarceration, some protection must be afforded to one who is "incapacitated” and, thereby, unfit to proceed, i.e., where, "as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense.” (CPL 730.10 [1].)
Notwithstanding the apparent legislative failure to address this problem, it is inconceivable that the Legislature intended to leave without an available remedy a person in the position of this defendant, who is clearly unfit and unable to assist his attorney in defending the VOP proceeding. The unavailability of the CPL article 730 examination procedure to one subject to a revocable probationary term, solely because sentence has *1067 already been imposed, would either (1) leave the court powerless to act on the VOP, notwithstanding a possible violation of probation, or (2) require vacatur or modification of the sentence, assuming such could be done prior to a hearing, in order to afford needed hospital and psychiatric relief.
In my view, neither alternative is acceptable. In the absence of any legislative proscription, the court should retain jurisdiction over a defendant who received a revocable probationary term and against whom a VOP proceeding has been brought. The efficacy of the proceeding and the protection owed to the public should permit the court, in a proper case, to order a CPL article 730 examination and, after compliance with the statutory standard and procedure, direct that defendant be committed to the custody of the Commissioner of Mental Hygiene. Only this procedure would afford defendant needed hospital and psychiatric treatment, while, at the same time, ensure the security of the public against his premature release and preserve the viability of the VOP as a criminal proceeding should defendant become fit to proceed in the future.
Whitree v State of New York (26 AD2d 720, lv denied 18 NY2d 583), relied upon by defense counsel, is not to the contrary. In that case, the Appellate Division, Third Department, affirmed an order, which had dismissed a claim to recover damages for the false imprisonment and illegal detention of the claimant in Matteawan State Hospital, from May 19, 1947 to September 8, 1961. According to claimant, the order of commitment was void on its face. In Whitree, as in our case, claimant pleaded guilty to a felony and was placed on probation. Three months later, he was taken into custody for a violation of probation and an examination as to his sanity was held. In seeking damages, claimant argued that, to the extent the commitment order was based upon those provisions applicable to defendants under indictment, the order was void on its face, since no criminal charge was pending and, thus, no valid commitment to Matteawan could be made. In support of his argument, claimant relied upon the recitation in the commitment order that there had been a conviction for assault in the third degree under an indictment filed May 21, 1945 and, what was before the court was a violation of probation. The Appellate Division disagreed, in a memorandum decision, which is most instructive (26 AD2d, at 721): "We are unable to agree with the contention that this language indicated — and that the superintendent of the hospital *1068 was bound to recognize — that the indictment had been disposed of and that no criminal charge was pending. As was correctly held by Special Term in the habeas corpus proceeding: 'The statute does not require any formal procedure relative to an alleged violation [of parole], save that the probationer be arraigned and be given the opportunity to be heard * * * Once those conditions have been met, the court retains jurisdiction under section 470-a of the Code of Criminal Procedure to revoke probation and impose a new sentence (People ex rel. Kern v. Silberglitt, 3 A D 2d 996).’ * * * Additionally, the body of the order makes it abundantly clear, by repeated references, that defendant is being held upon a criminal charge and that disposition of the pending indictment has been suspended until he shall regain his sanity. Clearly, the States agents were entitled to rely on these unequivocal statements.” (Emphasis added.)
Similarly, this court retained jurisdiction over defendant, who received a revocable sentence of probation, subject to specific conditions alleged not to have been complied with. A violation of probation having been properly commenced, after a VOP hearing, upon satisfactory proof, the court could vacate the sentence and resentence defendant to a term in jail. Plainly, to that extent, defendant was still subject to a criminal proceeding. This in my view, in the absence of legislative provision to the contrary, is sufficient to subject defendant to judicial direction of a CPL article 730 examination, consistent with the statutory procedure therefor and, where appropriate, commitment to the custody of the Commissioner of Mental Hygiene. This is especially so in a case like the present one, where there have been repeated threats of violence to members of the public, namely, defendant’s mother and the treating psychiatrist at Hikers Island.
Under the circumstances, in view of the undisputed opinions that defendant is unfit to proceed, in part, as a result of his psychotic condition and threats of violence, both to himself and others, the conclusion is inescapable that he should be committed to the custody of the Commissioner of Mental Hygiene, pending further order of the court. This direction should be made, notwithstanding the failure or refusal of defense counsel to seek such relief by appropriate application to confirm the findings and conclusions of the CPL article 730 examination.
Accordingly, upon the court’s own motion and, at the request of the District Attorney and the Department of Proba *1069 tion, the unanimous findings and conclusions of the psychiatric examiners that defendant is an incapacitated person and is unfit to proceed with a hearing on the violation of probation are confirmed. Defendant shall be placed in the custody of the Commissioner of Mental Hygiene pending further order of the court and the pending criminal proceeding, indictment and violation of probation are to be held in abeyance, with a VOP hearing to be conducted at such time as defendant is found fit to proceed in the future.